IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

BLAKE EUGENE FARR,           :
                             :
          Plaintiff,         :
                             :
     v.                      :     CIVIL ACTION NO.
                             :     2:11-CV-0074-RWS
STEVE BLACKWELL,             :
                             :
          Defendant.         :

## ORDER

This case comes before the Court on Defendant's Motion for Summary Judgment [51].  After reviewing the record, the Court enters the following Order.

### Background

Defendant Steve Blackwell ("Defendant") is a Special Agent with the Georgia Bureau of Investigation ("GBI").[1]  Defendant is currently assigned to the human trafficking unit of the GBI.  Previously, he was assigned to the Child Exploitation and Computer Crimes Unit, which focuses on individuals who are trading child pornography via the internet or the Gnutella network.

_____

[1] Unless otherwise noted, the facts are taken from Defendant's Statement of Undisputed Facts ("Def.'s SUF") [51-20].

During his time with the child exploitation unit, Defendant received training on the use of peer-to-peer networks, including BearShare, eMule, eDonkey, and others.  BearShare is software that can be utilized to gain access to the Gnutella network.  Using BearShare and a database that houses IP addresses offering to trade child pornography, Defendant tracked an IP address to Plaintiff's residence.  Defendant contacted Investigator Roe with the Forsyth County Sheriff's Office and learned that the computer belonged to Harold Farr, Plaintiff's father.  After receiving the information from Roe, Defendant went to the Hall County Sheriff's Office to inquire about Harold Farr.  Defendant was informed that Farr Sr. was a former employee of the Sheriff's Office and Plaintiff was a current employee.

On April 1, 2008, Defendant again identified an IP address registered to Harold Farr when he was searching the database for IP addresses offering child pornography.  However, the staff at the Hall County Sheriff's Office told Defendant that they did not believe Harold Farr had the skills to use a computer. After identifying the IP address, Defendant made a live connection to the Farr computer and retrieved files that contained titles consistent with those for child pornography.  Defendant then obtained a search warrant for the Farr residence,

2

which was executed on May 15, 2008.  Upon service of the search warrant, a preview was performed on the computer at the residence.  It appeared that there was child pornography on the computer (videos that appeared to be child pornography were found on the computer, but the ages of the children were not confirmed).

On the day the search warrant was executed, Defendant interviewed Plaintiff and Plaintiff's wife, Tracy Farr.  Tracy Farr denied downloading any pornography to the computer.  She stated that she had viewed pornography with her husband, but she had not seen any child pornography.  She advised Defendant that her husband had downloaded pornography to the computer, but it was all legal. Tracy Farr also stated that she and Plaintiff had been separated since February 15, 2008, and that she came to the residence almost every day but did not use the computer.

During his interview with Defendant, Plaintiff confirmed that he lived alone at the residence that was the subject of the search warrant.  Plaintiff admitted viewing the pornography that was found on the computer, and said he knew that pornographic movies with "teen" in the title were on the computer. In fact, Plaintiff said he used the word "teen" when searching for pornography.

3

Plaintiff told Defendant that Harold Farr could not operate a computer, and gave only one other name (Craig Smith) of someone who may have been on the computer, other than Plaintiff and his wife.  Based on his interview with Plaintiff, Defendant sought an arrest warrant for Plaintiff's possession of child pornography.  Plaintiff was arrested, but his case was never brought before a grand jury for indictment because the District Attorney did not think there was sufficient evidence.

Plaintiff filed suit against several defendants, alleging various state and federal law claims.  This Court dismissed all claims and all defendants, except the claim for malicious prosecution against Defendant Blackwell.  (See Order, Dkt. [30].)  Defendant Blackwell has filed a motion for summary judgment on the remaining claim against him.

## Discussion

## I.   Legal Standard - Summary Judgment

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for

4

its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which

5

are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.     Analysis

### A.     Malicious Prosecution

To state a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must show: (1) the elements of the common law tort of malicious prosecution, and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.  Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003), *cert. denied*, 540 U.S. 879 (2003)).  In Georgia, the elements of common law malicious prosecution are: (1) prosecution of Plaintiff for a criminal offense; (2)

the prosecution was instigated under a valid warrant, accusation, or summons;
(3) the prosecution terminated in Plaintiff's favor; (4) Defendant acted with
malice in instigating the prosecution; (5) Defendant lacked probable cause to
accuse Plaintiff of the crime; and (6) Plaintiff suffered damage as a result of the
prosecution.  Gooch v. Tudor, 674 S.E.2d 331, 334 (Ga. Ct. App. 2009).  At
issue here is: whether Plaintiff was prosecuted for a criminal offense, whether
Defendant had probable cause to accuse Plaintiff, and whether Defendant is
entitled to qualified immunity.

Defendant contends that no prosecution occurred because the case against
Plaintiff was never presented to a grand jury for indictment and other than an
initial bond hearing, no judge was involved in the matter.  (Special Agent
Blackwell's Brief in Support of His Motion for Summary Judgment ("Def.'s
MSJ Br."), Dkt. [51-19] at 10-11; see also Defendant's Statement of Undisputed
Facts ("Def.'s SUF"), Dkt. [51-20] ¶ 68.)  Plaintiff responds that his arrest, the
hours he spent in jail, his appearance before Hall County Superior Court Judge
Deal for a bond hearing, and the assignment of a case number to the matter
constitute a "prosecution."  (Plaintiff's Brief in Response and Memorandum of
Law in Opposition to Defendant Steve Blackwell's Motion for Summary

Judgment ("Pl.'s Resp. Br."), Dkt. [56] at 4-7).  The Court agrees with

Defendant.

Under Georgia law, "evidence of an inquiry before a committing court"

is "required to sustain a malicious prosecution claim." McNeely v. Home

Depot, Inc., 621 S.E.2d 473, 474 (Ga. Ct. App. 2005).  "For purposes of such a

claim, the prosecution must be 'carried on' . . . .  If a person is merely arrested

pursuant to a warrant, a claim for malicious prosecution will not lie." Id. at

475; see also Brown v. Lewis, 2009 WL 1457139, at *10 (M.D. Ga. May 22,

2009) (quoting Ferrell v. Mikula, 672 S.E.2d 7, 10 (Ga. Ct. App. 2008)

(distinguishing between false imprisonment, which is "unlawful detention

without judicial process, or without the involvement of a judge at any point;"

false or malicious arrest, which is "detention under process of law;" and

malicious prosecution, "which is detention with judicial process followed by

prosecution").

In Branson v. Donaldson, 426 S.E.2d 218, 221 (Ga. Ct. App. 1992), the

Court found "sufficient 'prosecution' to provide the basis for a malicious

prosecution action" where the appellee "was brought before a magistrate who

asked questions and then bound his case over for the grand jury and set bond . .

., even though appellee himself did not answer any questions." In <u>Branson</u>, the appellant swore out an arrest warrant charging appellee with criminal damage to property and the magistrate made the determination about whether there was sufficient evidence to turn the case over to a grand jury. <u>Id.</u> at 220. Appellee was called to appear before the grand jury three times. <u>Id.</u> Eventually, the district attorney dismissed the charge for insufficient evidence to prosecute. <u>Id.</u>

The Court finds that <u>Branson</u> is distinct from the case at bar in significant respects. The facts here do not support a finding that a "prosecution" occurred. An initial bond hearing is not equivalent to a hearing before a magistrate to determine if there is sufficient evidence for a grand jury. A bond hearing requires no evaluation of evidence or inquiry into the merits of a case.[2] There is no evidence in the record that Judge Deal questioned Plaintiff or did anything other than set the bond amount. Furthermore, there is no evidence that Plaintiff ever appeared before a grand jury.

---

[2] Under O.C.G.A. § 17-6-1(e), "[a] court shall be authorized to release a person on bail if the court finds that the person: (1) Poses no significant risk of fleeing from the jurisdiction of the court or failing to appear in court when required; (2) Poses no significant threat or danger to any person, to the community, or to any property in the community; (3) Poses no significant risk of committing any felony pending trial; and (4) Poses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice."

9

In fact, in his Complaint, Plaintiff states repeatedly that he was never indicted in connection with the allegations against him and he describes the whole incident as a "false arrest."  (Complaint, Dkt. [1] ¶¶ 47, 64-67.)  The Complaint does not even mention bond, a judge, or any courtroom proceeding.  (Id.)  Furthermore, Plaintiff's Statement of Material Facts as to Which There is a Genuine Issue [56-2] does not address the facts surrounding his alleged "prosecution."  The first mention of a judge's involvement or any court proceeding is in Plaintiff's response brief on summary judgment, and the brief contains no citations to the record regarding this issue.  (See Pl.'s Resp. Br., Dkt. [56] at 4-5.)

The cases cited by Plaintiff do not contradict this Court's finding that there was no prosecution here.  In Gooch v. Tudor, 674 S.E.2d 331, 334 (Ga. Ct. App. 2009), the issues were whether a party acted with malice in swearing out a warrant and whether there was probable cause underlying the warrant.  Similarly, in Smith v. Embry, 119 S.E.2d 45 (Ga. Ct. App. 1961), overruled on other grounds by Ferrell v. Mikula, 672 S.E.2d 7 (Ga. Ct. App. 2008), the Court did not decide the issue of whether a prosecution had occurred.  In fact, the Court concluded that the plaintiff had not sufficiently identified his cause of

10

action in his petition and was entitled to amend.  Smith, 119 S.E.2d at 49.  The

Court in Smith references Page v. Citizens' Banking Co., 36 S.E. 418 (Ga.

1900), as a guide to determining "what constitutes the 'carrying on' of a

prosecution."  Id. at 49.  Page says:

> Where a search warrant is issued, and under authority
> of the same the premises of the person named therein
> are searched, and goods seized which are not
> described in the affidavit, and the person named
> therein is arrested and carried before a justice of the
> peace, and, after the prosecutor is allowed a
> reasonable time to secure evidence, he fails to do so,
> and in open court announces that the prosecution
> cannot make out a case . . . against the person
> arrested, and asks that an order be entered discharging
> the accused from custody, and restoring to him the
> property which had been wrongfully seized, a
> prosecution has been 'carried on' . . . .  Especially
> would this be true where the hearing was continued
> from day to day, and pending the same the accused
> was compelled, in order to obtain his liberty, to give a
> bond for his appearance before the magistrate to
> answer the charge . . . .

Again, this case is distinguishable.  Following his arrest, the plaintiff in

Page went before a judge and the defendants "appeared to prosecute plaintiff,

with an attorney who was employed by [defendants]" and "such attorney did

represent the prosecution against plaintiff from its inception to its termination."

36 S.E. at 419.  When plaintiff asked to be released from custody on the

11

grounds that the warrant was defective and void, the magistrate refused to order his discharge "and the hearing was continued to the next day." Id.  Plaintiff then posted a bond "to appear for a preliminary hearing on the next day for the offense of larceny." Id.  The following day, the defendants requested a continuance and "on their motion the case was again continued until the following day, over the objection of petitioner, who was present and demanding a hearing." Id.  "At the time fixed in this last order of postponement, petitioner appeared with his counsel before the magistrate, and thereupon the prosecution, by their attorney, asked leave of the court to withdraw the warrant." Id.  In all, the plaintiff in Page was in constructive custody for 43 hours, appeared multiple times for substantive hearings before a magistrate judge, and was confronted with the defendants' case in court.

Plaintiff presents no equivalent evidence of a prosecution.  Based on the foregoing, the Court finds that no "prosecution" took place here.  Therefore, Defendant's motion for summary judgment should be **GRANTED.**

**B.    Qualified Immunity**

Defendant also argues that he is entitled to qualified immunity from Plaintiff's malicious prosecution claim.  (Def.'s MSJ Br., Dkt. [51-19] at 18-

12

23.)  Defendants sued in their individual capacities for discretionary acts are protected from suit by the doctrine of qualified immunity, unless those acts violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "To receive qualified immunity, a government official must first prove that he was acting within his discretionary authority."  McDaniel v. Yearwood, No: 2:11-CV-0165-RWS, 2012 WL 526078, at *13 (N.D. Ga. Feb. 16, 2012) (quoting Cottone v. Jenne, II, 326 F.3d 1352, 1357 (11th Cir. 2003)).  "Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity."  Id.  The latter part of the analysis is two-pronged.  "First, the court addresses the 'threshold question' of whether the facts as alleged, viewed in the light most favorable to the plaintiff, establish a constitutional violation."  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "Only if there is a constitutional violation does the court proceed to the second step to determine whether that constitutional right was clearly established."  Id.

To show that a constitutional right was clearly established, a plaintiff must show that "when the defendant acted, the law established the contours of a

13

right so clearly that a reasonable official would have understood his acts were unlawful." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). To determine whether an official would have understood his conduct to be lawful or unlawful, parties and courts must look to case law at the time of the alleged violation. "[T]he salient question is whether the law at the time of the alleged violation gave officials 'fair warning' that their acts were unconstitutional." McDaniel, 2012 WL 526078, at *13 (quoting Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003)). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Post, 7 F.3d at 1557.

Here, the parties do not dispute that Defendant was acting within his discretionary authority as an agent of the GBI. (Pl.'s Resp. Br., Dkt. [56] at 19.) Therefore, the burden is on Plaintiff to show that Defendant is not entitled to immunity. As to the threshold question of whether a constitutional violation occurred, the Court has already held that Plaintiff was not prosecuted and therefore, Plaintiff's action for malicious prosecution should fail. (See discussion in Part II.A., supra.) However, in an abundance of caution, the Court

14

will address the second prong of the qualified immunity analysis – whether a clearly established constitutional right was violated.

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734, (11th Cir. 2010) (citing Holmes v. Kucynda, 321 F.3d 1069, 1079 (11th Cir. 2003); Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" Id. (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)). "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." Id. at 734-35 (internal quotations omitted). "The standard is an objective one and does not include an inquiry in to the officer's subjective intent or beliefs." Id. at 735.

Defendant argues that based on the totality of the circumstances, he had probable cause – and certainly arguable probable cause – to believe that O.C.G.A. § 16-12-100(b)(8), which prohibits exploitation of children, had been

violated by Plaintiff.  (Def.'s MSJ Br., Dkt. [51-19] at 20-21.)  Specifically, in swearing out the arrest warrant, Defendant relied on the presence of known child pornography on the computer located at the residence where Plaintiff lived alone, an admission by Plaintiff that he had viewed the known child pornography, and an admission by Plaintiff that he used the software that held the child pornography and used search terms likely to retrieve child pornography.  (Id.)

Plaintiff responds that Defendant omitted critical facts to the Magistrate when swearing out the warrant for Plaintiff's arrest.  (Pl.'s Resp. Br., Dkt. [56] at 21.)  Specifically, Defendant did not disclose to the magistrate that: (1) the internet account was not registered to Plaintiff; (2) the BearShare account was not registered to Plaintiff; (3) many people had access to the internet account and the computer located in the Plaintiff's home; (4) Defendant failed to interview Harold Farr or Craig Smith; (5) Mrs. Farr admitted to viewing pornography on the computer; (6) the GBI did not know when the file was downloaded or by whom; and (7) Plaintiff did not have knowledge that the people in the file were underage.  (Id. at 22.)  Plaintiff contends that these

16

omitted facts would lead a reasonable person to request further investigation before issuing a warrant.

"Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." City of Huntsville, Ala., 608 F.3d at 735.  "Showing arguable probable cause does not, however, require proving every element of a crime."  Id.  O.C.G.A. § 16-12-100(b)(8) makes it "unlawful for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct."  One element of the crime, therefore, is knowledge that the subjects in the pornography are underage.  Plaintiff emphasizes throughout his brief that he did not know the people in the video were underage, and that neither Defendant nor the District Attorney could say that the people in the videos were readily identifiable by a layperson as underage.  (See, e.g., Pl.'s Resp. Br., Dkt. [56] at 9, 12.)  According to Plaintiff, Defendant's failure to disclose this fact (and the other facts listed above) to the Magistrate rendered the arrest illegal.  (Pl.'s Resp. Br., Dkt. [56] at 22-23.)

Plaintiff must meet the burden of showing, "in light of pre-existing law, the facts omitted *in this case* were clearly material (that is, that the facts omitted

17

clearly would have negated probable cause if those facts had been included)."
Haygood v. Johnson, 70 F.3d 92, 95 (11th Cir. 1995).  Put another way,
Plaintiff must show that the facts omitted here were so clearly material that
every reasonable law officer would have known that their omission would lead
to an arrest in violation of federal law.  Id.  Defendant argues that Plaintiff has
not met this burden.  The Court agrees.

In Haygood, the court concluded that the combination of omitted facts
"might for some reasonable police officers be insufficient to negate probable
cause."  70 F.3d at 95.  In that case, the officer failed to disclose in his warrant
application that the suspect had used an alias, that the tape recorder used during
a sting operation had turned off, and that the quantity of drugs allegedly
purchased exceeded the expected quantity by about fifty percent.  Id.  The
officer had, however, "been physically present at what looked by all
appearances to be a typical drug deal: he had witnessed a meeting in a
convenience store, a brief drive with no destination, a conversation in a
darkened automobile in a darkened corner of a parking lot, and the presentation
of what looked to be drugs promised by the informant."  Id.  The court reasoned
that, "[h]aving seen those occurrences firsthand, a reasonable officer . . . could

18

have concluded that [the omitted facts] would not negate probable cause and, thus, were not material." Id.

Here, Defendant had information obtained through the computer programs that child pornography was on the computer in Plaintiff's home. More importantly, however, Defendant personally interviewed Plaintiff and Plaintiff admitted that he had viewed and downloaded pornography on the computer, and that he used "teen" in his searches for pornography. Furthermore, Plaintiff admitted to Defendant that he lived alone, that his father, Harold Farr, could not operate a computer, and that Craig Smith hardly ever used the computer. Given the information Defendant obtained directly from Plaintiff, a reasonable officer could have concluded that the omitted facts would not negate probable cause.

Defendant also relies on Scarbrough v. Myles, 245 F.3d 1299 (11th Cir. 2001). In that case, plaintiffs were arrested for knowingly selling products with unauthorized trademarks. Scarbrough, 245 F.3d at 1302 n.7. The plaintiffs argued that their arrests lacked probable cause because the officer had no evidence at the time of arrest that the plaintiffs knew that the products infringed a trademark. Id. at 1302. The district court agreed with plaintiffs and denied

the officer qualified immunity.  Id.  The Eleventh Circuit disagreed with the district court's conclusion, stating: "Arguable probable cause does not require any arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors."  Id. at 1302-03.  The Court finds Scarbrough persuasive here.  Notably, Plaintiff has not identified any competing authority showing that Defendant violated a "clearly established" constitutional right.

Even though Defendant did not have evidence that Plaintiff knew the people in the videos were underage at the time of arrest, he still had arguable probable cause.  The Court cannot say, based on existing case law, that *every* reasonable officer would have *known* that the omitted facts would negate probable cause.  Therefore, Defendant did not violate a clearly established constitutional right and he is entitled to qualified immunity.

## Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment [51] is **GRANTED**.

20

**SO ORDERED**, this  18th  day of March, 2013.

**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)